IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

THOMAS C. RICH )
)
v. ) No. 2:10-0117
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

To: The Honorable John T. Nixon, Senior District Judge

**REPORT AND RECOMMENDATION**

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act ("the Act").

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff could perform his past job as a carpenter (tr. 21) during the relevant time period is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the record (Docket Entry No. 13) should be denied.

1

## I. INTRODUCTION

The plaintiff filed an application for DIB on July 21, 2008 (tr. 101),[1] alleging a disability onset date of July 1, 2006, due to degenerative disc disease, kidney failure, sleep apnea, a heart condition, thyroid problems, and depression. (Tr. 102, 108.) His applications were denied initially and upon reconsideration. (Tr. 49-64.) A hearing before Administrative Law Judge ("ALJ") James A. Sparks was held on November 18, 2009. (Tr. 27-40.) The ALJ delivered an unfavorable decision on December 17, 2009 (tr. 15-23), and the plaintiff sought review by the Appeals Council. (Tr. 10.) On October 1, 2010, the Appeals Council denied the plaintiff's request for review (tr. 1-3), and the ALJ's decision became the final decision of the Commissioner.

## II. BACKGROUND

The plaintiff was born on August 31, 1965, and was 40 years old as of July 1, 2006, his alleged onset date. (Tr. 29, 46.) He has a GED (tr.30, 115) and had worked as a carpenter. (Tr. 109.) The plaintiff's date last insured for DIB is December 31, 2007. (Tr. 46.)

**A. Chronological Background: Procedural Developments and Medical Records**

The plaintiff contends that the ALJ requested that he undergo a consultative evaluation ("CE") but that he was never afforded a CE before the ALJ determined that he was not disabled through his date last insured. Docket Entry No. 14, at 2-3. At the plaintiff's hearing, the ALJ asked

---

[1] In the plaintiff's memorandum in support of his motion, the plaintiff indicates that he filed claims for both DIB and Supplemental Security Income ("SSI") (Docket Entry No. 14, at 1), but the record does not contain his application for SSI. The defendant notes that the plaintiff incorrectly asserted that he filed an application for SSI (Docket Entry No. 15, at 2), and the plaintiff did not rebut that assertion in his reply.

the plaintiff if he were being treated for any mental problems and he replied that he had not received any mental health treatment because "I thought I could handle it on my own, but it is starting to wear on me pretty bad." (Tr. 38.) The ALJ then determined that the "best thing" was for the plaintiff "to just go ahead and get a CE" and have a supplemental hearing "if we have to." (Tr. 38-39.)

The Commissioner contends that this Court should focus on the record medical evidence that pertains to the plaintiff's "mental limitations" since the only issue about which the plaintiff raises concerns is the ALJ's failure to ensure that he undergo a CE relating to his "allegation of depression." Docket Entry No. 15, at 2. In his reply, the plaintiff argues that he "never raised any issue related to depression" and that his brief in support of his motion for judgment on the administrative record "deals with a procedural issue where the Honorable ALJ stated prior to the close of the hearing that he did not have enough evidence to determine the claimant's residual functional capacity based on the record as a whole and that he was scheduling the claimant for a consultative examination . . . ." Docket Entry No. 17, at 1. Further, the plaintiff notes that "[t]he issue is not related to mental limitations . . . . [in as much as] [t]he claimant's primary allegations were related to his physical impairments and his pain and the mental limitations were only a very small addition to this overall claim." *Id.* at 1-2.

Although the plaintiff is correct in arguing that his claim for DIB focuses primarily on his physical impairments (tr. 102, 108) and that he did not specify in his memorandum whether the CE was to assess a physical or mental impairment, it is clear from the hearing testimony that the ALJ's decision to refer him for a CE was made in the context of discussing his possible "mental problem[s]." (Tr. 38-39.) Therefore, the Court will focus on the record medical evidence detailing the plaintiff's mental impairments.

3

Between October of 2004, and May of 2009, the plaintiff presented to Jamestown Regional Medical Center ("Jamestown") Emergency Room with various complaints of pain. (Tr. 208-356.) Treatment notes show that the plaintiff "demonstrated normal behavior appropriate for age and situation" (tr. 215, 222, 231, 248, 254, 453, 467), that his mood and affect were normal (tr. 285, 465), that he had no psychosocial symptoms (tr. 295, 303), and that he had "[n]o complaints of depression, anxiety, nervousness, memory lapses, or mood swings." (Tr. 311, 324, 338, 350, 445.) The plaintiff was diagnosed with "mild depression" on June 17, 2008, and with depression, without any indication of severity, on December 9, 2008. (Tr. 405, 412.)

The plaintiff's medical records include five notations of anxiety on November 23, 2004, July 11, 2005, December 31, 2005, August 5, 2007, and December 31, 2007 (tr. 264, 274, 298, 306, 321),[2] when the plaintiff presented to the Jamestown emergency room with complaints of confusion after he had "passed out" and pain in multiple areas (tr. 260-61), abdominal pain (tr. 270-74), leg and arm pain (tr. 298), chest pain (tr. 302-03, 306), and "synopical [sic]" episodes, with chest, shoulder, and back pain. (Tr. 317.) The plaintiff was assessed by a nurse at the emergency room on August 5, 2007, as displaying "inappropriate" behavior and appearing "anxious," and "frightened with care giver(s) or others," and reassessed two and a half hours later with "an altered mental status." (Tr. 321.) However, the admitting physician indicated that the plaintiff made "[n]o complaints of depression, anxiety, nervousness, memory lapses, or mood swings." (Tr. 324.) The December 31, 2007, nurse's assessment similarly indicated that the plaintiff's behavior was "inappropriate" and that he appeared "nervous, anxious [and] to have ineffective coping." (Tr. 306.)

---

[2] Although these assessments indicate that the plaintiff was "anxious" (tr. 264, 274, 298, 306, and 321), the emergency room records on four or five of the dates also indicate that the plaintiff had "[n]o abnormalities of mood or affect." (Tr. 262, 276, 296, and 304.)

4

Again, however, the treating physician noted that the plaintiff had "[n]o complaints of depression, anxiety, nervousness, memory lapses, or mood swings." (Tr. 311.) No treatment was prescribed or suggested for the plaintiff's "anxiety" once he was released on those occasions. As the defendant points out, the plaintiff's anxiety was "contemporaneous with" his complaints of pain and other medical issues. Docket Entry No. 15, at 3.

From June of 2007, to September of 2009, the plaintiff presented to Gordonsville Clinic, PLLC ("Gordonsville") on multiple occasions with various complaints of physical impairments and on one occasion, December 9, 2008, the nurse indicated that he was "anxious," and that his "nerves are bad" because of "family issues." (Tr. 368.) On December 4, 2009, plaintiff presented to Dr. Vijaya Patibandla, of Fentress Internal Medical Center, and he diagnosed the plaintiff with depression and prescribed Celexa.[3] (T. 489.) On January 5, 2010, the plaintiff returned to Dr. Patibandla and related that his medication was helping him but that it was also causing him to have headaches. (Tr. 487.) Dr. Patibandla diagnosed him with depression and reduced his dosage of Celexa. *Id.* Between February and April of 2010, Dr. Patibandla diagnosed the plaintiff with depression on several occasions and increased his dosage of Celexa. (Tr. 481-85.)

**B. Hearing Testimony**

At the hearing before the ALJ, the plaintiff was represented by counsel, and the plaintiff testified. (Tr. 29-39.) The plaintiff testified that he has a GED, that he does not drive, and that he has been unable to work since July 6, 2006, due to rheumatory inflamation, which causes pain in his left shoulder, chest, and leg, and back pain caused by degenerative disc disease . (Tr. 30.) He related

---

[3] Celexa is a "selective serotonin reuptake inhibitor (SSRI)" used to treat major depression. Saunders Pharmaceutical Word Book 141 (2009) ("Saunders").

5

that he takes Percocet[4] for his pain, that he is only able to walk for fifteen minutes and stand for thirty minutes, that he has fatigue due to thyroid problems, and that, on a scale of one to ten, his level of pain was a seven even after taking Percocet. (Tr. 31-32.)

The plaintiff testified that he had to leave his job as a carpenter after having a heart attack and that he tried to work as a gas station attendant but "worsening back problems" forced him to quit working. (Tr. 34.) The plaintiff related that he uses a cane due to his back pain and inflammatory arthritis, that he is only able to lift 25 to 30 pounds for a few seconds, that his wife does the household chores and shops for groceries, that he lies down several times a day, and that he has difficulty concentrating and with his memory. (Tr. 35-38.) The plaintiff testified that he "sometimes" gets depressed and feels as if he is "not worthy of having [his] life." (Tr. 38.) The ALJ asked the plaintiff if he were being treated for any mental problems and the plaintiff responded that he was not receiving treatment because he "thought [he] could handle it on [his] own." *Id.* The ALJ then related to the plaintiff's attorney that it would be "the best thing . . . to just go ahead and get a CE." *Id.* The ALJ then noted that "if we have to have a supplemental hearing then we will," that it was "important" for the plaintiff to attend his CE, and that the CE "won't cost [him] anything." (Tr. 39.)

### III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on December 2, 2009. (Tr. 15-23.) Based on the record, the ALJ made the following findings:

---

[4] Percocet is an opioid painkiller and anti-inflammatory medication. Physicians Desk Reference 1121 (64th ed. 2010) ("PDR").

6

1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 1, 2006 through his date last insured of December 31, 2007 (20 CFR 404.1571 *et seq*.).

3.  Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine; coronary artery disease; nephrolithiasis, and thyroid disorder (20 CFR 404.1520(c)).

* * *

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526.).

* * *

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform work as defined in 20 CFR 404.1567(c) except his alleged impairments singly and combined with pain and fatigue reduces his residual functional capacity to an exertional level of medium with environmental limitations to avoid temperature extremes.

* * *

6.  Through the date last insured, the claimant was capable of performing past relevant work as a carpenter. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

* * *

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2006, the alleged onset date through December 31, 2007, the date last insured (20 CFR 404.1520(f)).

(Tr. 17-22.)

## IV. DISCUSSION

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Jones* v. *Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to

8

support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that he suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. Sept. 24, 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R.

9

§ 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff

10

can perform other substantial gainful employment, and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the plaintiff can perform, he is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *Her*, 203 F.3d at 391. *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B. The Five-Step Inquiry

In this case, the ALJ decided the plaintiff's claim at step four of the five-step process. (Tr. 21.) At step one, the ALJ found that the plaintiff demonstrated that he had not engaged in

11

substantial gainful activity since July 1, 2006, the alleged onset date of disability. (Tr. 17.) At step two, the ALJ found that the plaintiff's degenerative disc disease of the lumbar spine, coronary artery disease, nephrolithiasis, and thyroid disorder were severe impairments. *Id.* At step three, the ALJ determined that the plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.) At step four, the ALJ determined that the plaintiff could perform his past relevant work as a carpenter. (Tr. 21.)

**C. Plaintiff's Assertions of Error**

The plaintiff contends that the ALJ erred by not affording him a CE "that the Honorable ALJ ordered and the unfavorable decision went forward without the evidence that the Honorable ALJ himself requested." Docket Entry No. 14, at 2.

It is well-established that the plaintiff has the ultimate burden of proving disability. *Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. May 29, 2008) (citing 20 C.F.R. § 404.1512(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 181 F.3d 104, 1999 WL 357818, at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.") (citing 20 C.F.R. §§ 416.912, 416.913(d)). However, the ALJ bears the responsibility for ensuring that the record is fully and fairly developed before making a disability determination. *Branich v. Barnhart*, 128 Fed. Appx. 481, 488 (6th Cir. Apr. 19, 2005) (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). *See also Lashley v. Sec'y*

12

*of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983) ("[T]he administrative law judge must not become a partisan and assume the role of counsel: 'The social security hearing examiner furthermore does not act as counsel. He acts as an examiner charged with developing the facts.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 411, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

One tool that the ALJ has at his disposal to develop the record fully and fairly is to request that the plaintiff undergo a physical or mental consultative examination. The Regulations provide that "[i]f the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from you medical source, we will ask you to attend one or more consultative examinations at our expense."[5] 20 C.F.R. § 404.1512(f). *See also* 20 CFR § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.") Additionally, the Sixth Circuit has found that the ALJ "has discretion to determine whether further evidence, such as additional testing, is necessary." *Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 675 (6th Cir. Dec. 18, 2009) (citing 20 C.F.R. § 404.1517). *See also Landsaw,* 803 F.2d at 214 ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."); *Powell v. Astrue*, 2011 WL 3489995, at *4 (E.D. Ky. Aug. 9, 2011) ("The ALJ is not required, however, to order a consultative examination, but is instead authorized to order one when necessary.").

---

[5] The Regulations note that "[t]he decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of your medical sources." 20 CFR § 404.1519a.

13

At the plaintiff's hearing in this case, the ALJ asked the plaintiff if he were being treated for any mental problems and he replied that he had not received any mental health treatment because "[he] thought [he] could handle it on [his] own, but it is starting to wear on me pretty bad." (Tr. 38.) The ALJ then determined that the "best thing" was for the plaintiff "to just go ahead and get a CE" and have a supplemental hearing "if we have to." (Tr. 38-39.) The plaintiff contends that he was never afforded a CE after his hearing and that the ALJ concluded that he was not disabled without having "evidence that the Honorable ALJ himself requested." Docket Entry No. 14, at 11.

Although the Court agrees with the plaintiff that the ALJ erred in failing to have a CE scheduled for him after his hearing, that failure constitutes harmless error. The Sixth Circuit has recognized that "'[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations.'" *Rabbers*, 582 F.3d at 654 (quoting *Wilson,* 378 F.3d at 545)). *See also Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.") However, the Sixth Circuit also applies the harmless error principle when reviewing administrative agency decisions in order to address situations in which remand would amount to nothing more than an "'idle and useless formality.'" *Rabbers,* 582 F.3d at 654 (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969), and citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)).

In this case the plaintiff's period of disability began on July 1, 2006, his alleged onset date, and concluded on December 31, 2007, his date last insured, but the medical evidence in the record does not show that he suffered from a severe mental impairment during that period. In fact, the ALJ noted "a longitudinal view of the evidence does not establish a mental condition of the level of

14

severity or duration to significant work-related limitations for a continuous 12-month period." (Tr. 19.) First, the plaintiff was not diagnosed with "mild depression" until June 17, 2008, nearly six and a half months after his period of disability ended. (Tr. 405) He was diagnosed again for depression on December 9, 2008, but there is no indication that he received specific treatment for it. (Tr. 412.) Next, between July 1, 2006, and December 31, 2007, treatment notes from Jamestown show that the plaintiff was "anxious" on two occasions, but his anxiety was contemporaneous with physical pain and he received no specific treatment for it (tr. 306-07, 321-22); that he "demonstrated normal behavior appropriate for age and situation" (tr. 222, 231, 248, 254); that he had no psychosocial symptoms (tr. 303); and that he had "[n]o complaints of depression, anxiety, nervousness, memory lapses, or mood swings. (Tr. 311, 324.) Finally, the record evidence indicates that the plaintiff did not begin receiving treatment for depression until December 9, 2008, when Dr. Patibandla diagnosed him with depression and prescribed Celexa. (Tr. 489.)

While the Court empathizes with the plaintiff and finds the ALJ's failure to afford him a CE, after verbally directing that he participate in a CE, to be both confusing and troubling,[6] remanding this case for the plaintiff to undergo a CE would not change the eventual outcome since there is no evidence in the record indicating that the plaintiff suffered from or was treated for depression or any other mental impairment prior to his date last insured. As noted by the Sixth Circuit, "[w]hen

---

[6] The defendant maintains that the ALJ "suggested" that he would order a CE. Docket Entry No. 20, at 1. In fact, the ALJ said, "we *will* send him to a CE." (Tr. 39) (emphasis added). The Court notes that the regulations governing consideration of applications for disability benefits emphasize that the ALJ should explain his decision so that the claimant will understand his reasoning. *See, e.g.,* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4. Informing the plaintiff that a CE should be scheduled and subsequently denying his application for benefits without scheduling a CE and without providing any explanation for failing to do so does not comport with the clear mandate of the regulations.

15

'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Comm'r of Soc. Sec.,* 114 Fed. Appx. 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. at 766 n.6).

## V. RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) be DENIED and that this action be DISMISSED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge